UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED
NOV 23 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-48-GWU

TOMMY MAGGARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Maggard

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Maggard suffered from chronic low back pain and a history of alcoholism, now in remission. (Tr. 18).He based his functional restrictions on an assessment of Dr. Joseph Rapier. (Tr. 20). He indicated that he ". . . agree[d] with the State Agency's opinion that claimant has no medically determinable mental impairment." (Tr. 20).[1] While the ALJ believed that Maggard was unable to perform his past work, he found that he was capable of performing significant numbers of light and sedentary jobs which had been identified by the vocational expert (VE). (Tr. 21-22). Thus, the claim for DIB was denied. (Tr. 22).

The VE had identified jobs in response to a hypothetical question, which itself must adequately describe the plaintiff. The VE was asked to assume the existence of a hypothetical individual with (1) an age of 40, (2) an eighth grade formal education but minimal ability to read and write, (3) the capacity to do no more than light level exertion, (4) a need to only occasionally climb, stoop and crawl, (5) a need to avoid vibrations, jars, or jolts, and (6) an inability to work in cramped positions. (Tr. 259-260).

---

[1]The ALJ also indicated that he found the claimant's other alleged impairments (neck pain, residuals of gunshot wounds) as non-severe. (Tr. 18, 20).

Maggard

The medical records indicate that the plaintiff suffered a gunshot wound to the left lower chest in the 1980s. (Tr. 101). No functional restrictions were suggested, and it is evident that the plaintiff worked for some years thereafter, after he had recovered. Maggard also sustained another gunshot wound to his right upper quadrant in January, 2001. (Tr. 107, 124). No specific functional restrictions were cited by his primary treating source for the condition. (Tr. 124-136).

The plaintiff's back, the focus of many complaints, was injured in October, 2000.

At the beginning of November, Dr. Shahab Ethesham referred the patient for physical therapy (Tr. 114), which proved unsuccessful in the next three weeks (Tr. 113).

Maggard then consulted Tausif Sayied of the Shelby Valley Clinic in late November and early December. The doctor noted that an MRI of the lumbar spine showed grade 1 spondylolisthesis of L5 on S1, which he "doubted" was primarily causing the back pain. (Tr. 121). He believed that the plaintiff most likely had a lumbar strain and should remain off work temporarily. (Id.). Tenderness remained on the next office visit, and the doctor wanted him examined by another physician and was to remain off work until evaluated by that doctor. (Tr. 119).

The plaintiff sustained his second gunshot wound in January, when the doctor noted incidentally that the plaintiff was exhibiting "a lot of" pain in his back. (Tr. 125).

8

An independent medical evaluation was conducted in February, 2001 by Orthopedic Surgeon Timothy Wagner. (Tr. 106). Wagner appeared to believe that the plaintiff's problem was lower back pain secondary to a strain injury with pre-existing L5-S1 spondylolisthesis, grade 1. (Tr. 109). The doctor felt that Maggard could not return to his coal mining job due to the amount of forward bending required, but that he could be capable of office work, alternately being seated with moderate walking and standing. (Id.).[2] No more than 20 pounds should be lifted, with no crawling, bending or stooping. (Id.).

This information was reviewed by an agency medical reviewer who completed a capacity assessment form. Therein, the plaintiff was found capable of medium level work with restriction to occasionally climbing ladders, ropes and scaffolds, stooping, and crouching. (Tr. 142-149). No specific reasoning is given for discounting Wagner's comment about alternating between sitting and standing or walking, postural activities, and the different weight maximums. (Compare Tr. 143, 144, 150 with Tr. 110).

Subsequently-submitted records show that Maggard had begun to see a pain management specialist, Dr. Sai Gutti, in January, 2001. The doctor found mild weakness of the left foot dorsiflexors, sensation decreased to pinprick in the left

---

[2]This would appear to be somewhat consistent with an agency representative's observation that the claimant had difficulty with prolonged sitting and walked at a slow pace (Tr. 57) and his complaints to Dr. Sayied that he could not engage in prolonged sitting and standing (Tr. 121).

lower extremity in the outer thigh and leg, moderate diffuse tenderness in the back of neck, cervical spine spasms especially on the left side, moderate obliteration of the lumbar lordosis, moderate tenderness of the low back with more tenderness over the midline, some pain and spasm on straight leg raising, point tenderness over the S1 joint, and a positive Faber's test indicative of S1 joint dysfunction. (Tr. 206-207). While awaiting treatment to be authorized by Worker's Compensation insurance, which was to include NCV-EMG testing and injections, the plaintiff was advised not to do any "aggressive bending or lifting." (Tr. 201, 203). The doctor did not believe that the patient had reached the maximum medical improvement. As of July, 2001, the aforementioned procedures had not been approved by the insurance company and the doctor noted that "he has not received any interventional treatment at this time . . . and in the meantime his pains are escalating and he is suffering and . . . not able to do day to day activities." (Tr. 199). An office visit note for August 20, 2001 indicated that the plaintiff's condition was unchanged and that no procedures had yet been authorized. (Tr. 197, 210).

In November, 2001, the plaintiff was examined by Joseph Rapier, who also saw records from the physical therapy clinic, Dr. Sayied, and Dr. Gutti, as well as the MRI scan of November 24, 2000. (Tr. 209-210). Rapier indicated that he would limit Maggard to occasional lifting up to 20 pounds, a need to avoid *repetitive or frequent bending*, lifting, *turning, twisting*, and avoiding "a lot of" vibrations, jars or jolts or working in cramped positions. (Tr. 212).

The Court notes that (1) certain of Rapier's restrictions were omitted from the hypothetical question so that his opinion can not fully validate the hypothetical physical factors, (2) Gutti's notes (indicating an inability to perform day to day activities) suggests a failure to improve over time and a need for continued recuperation, and (3) Wagner's restrictions were not properly addressed by the non-examining state agency physician, who obviously also did not have the opportunity to review the subsequently-submitted evidence. Accordingly, the physical factors alone would have provided a basis to order a remand of the case.

The plaintiff's brief, in its heading, and text focus on the plaintiff's mental condition and the characterization of his literacy level.

The report from Phil Pack and Crocker Peoples suggests that Maggard had malingered on his March, 2001 psychological evaluation. (Tr.140 ). The examiners did suggest only "fair" concentration, attention span, judgment and insight under the "behavioral observations" section of their report (Tr. 139), although seemingly contradictorily they ultimately indicated they were "unable to determine" the plaintiff's concentration and attention capacity (Tr. 140). Diagnoses other than malingering were deferred "pending valid testing." (Id.).[3]

---

[3]After this report was submitted, non-examining medical reviewers opined that there was no medically determinable mental impairment. (Tr. 152, 169). Obviously, these reviewers did not see or comment upon subsequently-submitted evidence from Cook and the pain management specialist.

Stuart Cooke, a psychologist, examined the plaintiff in November, 2001. (Tr. 184). He indicated that Maggard was somewhat disheveled and evidenced moderate pain behavior. (Tr. 187). He appeared to be of limited intelligence. (Id.). The plaintiff obtained IQ scores from the 50s to the 70s; the examiner believed that this was influenced by his depression. (Tr. 189). The WRAT testing showed kindergarten level reading, which the examiner did not feel was the result of purposeful exaggeration. (Id.). Cooke diagnosed an atypical depressive disorder, and possible mild mental retardation. (Tr. 190). He believed that the plaintiff had a 14 percent impairment rating (Tr. 191) and cited a current GAF level of 55 (Tr. 190), which translates into moderate symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

Meanwhile, the plaintiff's pain management specialist had been actively diagnosing depression (Tr. 197-198), indicating that his patient was "suffering emotionally" dealing with his pain (Tr. 199), mentioning "reactive depression" in his patient history (Tr. 201) or prescribing sleep medication (Tr. 204) for at least a five month period.

Given the contradictions in the Pack/Peoples report, Cooke's GAF, and the notation of depression from a treating source, the ALJ erred in including no mental restrictions in the hypothetical question as well.

The plaintiff's main argument concerns the characterization of his educational status. The representative processing his claim initially noted that the plaintiff wrote

Maggard

at a slow pace (Tr. 57), something not noted by the ALJ. The claimant also stated from the beginning that he had been in Special Education classes in reading in school and could not read and write (Tr. 80). Moreover, the only WRAT results--including the only scores considered valid--indicated reading only at the kindergarten level (Tr. 139, 189). This evidence is inconsistent with the designation of "limited education" contained in the text of the ALJ's opinion. (Tr. 22). At first glance, however, the plaintiff's educational achievement is only arguably inconsistent with the "minimal ability to read and write" factor cited to the VE (Tr. 259), raising the possibility of harmless error; however, given the fact that the jobs cited were said by the VE to be compatible with jobs in the Dictionary of Occupational Titles (DOT) (Tr. 260), yet the DOT requires virtually every position enumerated to have more than minimal literacy, it does not appear that the VE interpreted the educational factor in a manner that properly depicted the plaintiff.

The decision will be remanded on all grounds cited above.

This the ___23___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13